IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| WILLIAM P. BENNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CV 04-6295-CO |
| v. | ) | |
| | ) | FINDINGS AND |
| JO ANNE B. BARNHART, Commissioner of | ) | RECOMMENDATION |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

KATHRYN TASSINARI
DREW L. JOHNSON
1700 Valley River Drive
Eugene, OR 97401

    Attorneys for Plaintiff

KARIN IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600

1 - FINDINGS AND RECOMMENDATION

Portland, Oregon 97204-2902

LUCILLE G. MEIS
Office of General Counsel
FRANCO L. BECIA
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

COONEY, Magistrate Judge:

## INTRODUCTION

Plaintiff William Bennett brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). The Commissioner's decision should be affirmed.

## BACKGROUND

Bennett satisfied the insured status requirements for a claim under Title II through June 30, 2001, and must establish that he was disabled on or before that date to prevail on his claim. 42 USC § 423(a)(1)(A). *See Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

At the time his insured status expired, Bennett was 61 years old. He has a college education and worked as an automobile salesperson and automobile sales supervisor. Bennett alleged disability beginning February 27, 1998, due to functional limitations resulting from multiple sclerosis. Tr. 43,

57.[1]  These include difficulty walking, poor concentration, deterioration in his speech, vision, hearing and vocabulary and fear of social interactions.  Tr. 57, 425, 430.

## DISABILITY ANALYSIS

The initial burden of proof rests upon the claimant to establish disability.  *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 US 137, 140 (1987); 20 CFR § 404.1520.  Bennett challenges the ALJ's determination at step two of the five-step process.

At step two, the ALJ must determine whether the claimant has any impairment that is severe within the meaning of the Act.  The claimant is not disabled if he has no "medically severe impairment or combination of impairments."  *Bowen v. Yuckert*, 482 US at 140-41; 20 CFR § 404.1520(c).

## THE ALJ's FINDINGS

At step two, the ALJ found that Bennett's only medically determinable impairment is mild to severe sensorineural hearing loss in both ears, which is improved with the use of hearing aids.  The ALJ found that this does not significantly limit his ability to perform basic work-related activities.  The ALJ concluded that Bennett has no impairments that are severe within the meaning of the Act, and that he is not disabled.  Tr. 19.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed with the Commissioner's Answer (docket # 5).

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISCUSSION

Bennett contends the ALJ erred at step two by failing to find that his medically determinable impairments combine to impose sufficient limitation in his ability to perform basic work-related activities to proceed beyond step two.

In the alternative, Bennett contends the ALJ failed to fully develop the record to determine whether he has been diagnosed with multiple sclerosis and whether he has any psychological impairment.

### I. Step Two

A claim may be denied at step two only if the evidence shows that the individual's impairments do not have more than a minimal effect on the person's physical or mental ability to perform basic work activities. If such a finding is not clearly established by medical evidence, however, adjudication must continue through the sequential evaluation process. At this stage,

medical evidence alone is evaluated in order to assess the effects of the impairment on ability to do basic work activities. Social Security Ruling (SSR) 85-28.

An impairment is severe for the purposes of step two if it significantly limits the claimant's ability to perform basic work activities. 20 CFR § 404.1521. Basic work activities are the abilities and aptitudes necessary to do most jobs. *Id.* These include physical functions, such as seeing, hearing, speaking, walking, standing and sitting, and mental functions, such as understanding, remembering, using judgment and responding appropriately to work situations. 20 CFR § 404.1521(b).

An impairment can be found "not severe" only if it is a minor abnormality that has no more than minimal effect on the claimant's ability to work. *Smolen v. Chater*, 80 F3d 1273, 1290 (9th Cir 1996). The inquiry at step two is a *de minimis* screening tool to dispose of groundless claims. *Id.* The burden to show a medically determinable severe impairment is on the claimant. *Bowen v. Yuckert*, 482 US at 146.

Bennett argues that three impairments combine to impose greater than minimal limitation in his ability to perform basic work-related activities: nystagmus, ischemic changes and hearing loss. Plaintiff's Memorandum at 15-16. However, the medical evidence does not show that functional limitations from these conditions existed at any time before his insured status expired.

In October 2001, after his insured status had already expired, Bennett had moderate sensorineural hearing loss at high frequency, but normal hearing at all other frequencies and good word recognition. He did not require treatment and the only recommendation was for annual audiology examinations. Tr. 154. He was not fitted for hearing aids until May 2002, and after receiving them reported good sound quality and clarity. Tr. 185. The ALJ could reasonably conclude

5 - FINDINGS AND RECOMMENDATION

that Bennett did not have functional limitations in basic work activities from hearing loss at any time before his insured status expired.

The medical evidence shows that Bennett has "some horizontal jerk nystagmus" with left gaze. Tr. 187. On an eye examination in May 2001, Bennett had nystagmus with left gaze that improved with right gaze. However, his visual acuity was not significantly impaired by this and the only recommendation was to return for another examination is six months. Tr. 197-98.

At a neurology consultation in June 2001, extraocular movements revealed nystagmus with left and right gaze, worse on the left. Tr. 195. However, there was no finding of any functional limitation from this. At a neurology followup in September 2001, Bennett's extraocular movements and visual fields were intact without nystagmus. Tr. 189. In October 2001, Debra Syna, MD, found that he could not track an object, but when she performed doll's eyes maneuvers, he was able remain fixated on an object while she turned his head. This maneuver revealed left jerk nystagmus when his gaze was turned to the left. Tr. 157.

The ALJ could reasonably conclude from this evidence that Bennett had no functional limitation from nystagmus when his insured status expired. Even later, the medical evidence showed no functional limitation other than a somewhat impaired ability to follow objects with his eyes turned to the left. The activities required by most jobs do not include maintaining a fixed head posture that would require tracking objects with the eyes turned to the left.

On September 17, 2001, an MRI scan of the brain revealed "a few scattered white matter T2 changes" which the neuroradiaologist interpreted as most consistent with small matter ischemic changes. Tr. 177, 190. After considering this report, Bennett's neurologist did not find any

symptoms that warranted treatment. Tr. 191. There is no medical evidence that these ischemic changes resulted in any functional limitation in any work-related activity.

In summary, the record does not support Bennett's argument that he has more than slight limitations from the three conditions he asserts. The ALJ considered all the medical evidence and rationally concluded that it does not show any impairment or combination of impairments that significantly limit Bennett's ability to perform basic work activities.

## II. Development of the Record

In Social Security cases, the ALJ has a duty to fully and fairly develop the record and to assure that the claimant's interests are considered. *Brown v. Heckler*, 713 F2d 441, 443 (9th Cir 1983). The duty to develop the record further is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F3d 453, 459-60 (9th Cir 2001); *Tonapetyan v. Halter,* 242 F3d 1144, 1150 (9th Cir 2001).

Bennett contends the ALJ failed to fully develop the record in two areas. First, he argues that the ALJ was required to develop the record because it is "very unclear as to whether or not Bennett has been diagnosed with multiple sclerosis." Plaintiff's Memorandum at 17. This argument cannot be sustained. After a neurological examination and MRI scan, his neurologist concluded in September 2001, "It is highly unlikely that this patient has multiple sclerosis." Tr. 191. No medical source made contrary findings.

Several medical sources reported Bennett's subjective claim that he had received an MS diagnosis in the distant past. Bennett believes this raises ambiguity requiring the ALJ to develop the record further. However, in determining whether a claimant's impairment is severe, the ALJ looks to the degree of functional limitation in basic work activities, not the diagnosis. 20 CFR § 404.1521.

Bennett's neurologist opined that "even if his symptoms did point to multiple sclerosis, it is improbable that they would warrant treatment . . . given their indolent and episodic course." Tr. 191.

The absence of functional limitations resulting from Bennett's condition makes it unnecessary to develop the record regarding his diagnosis. Even if it is unclear whether Bennett has ever been diagnosed with multiple sclerosis, the medical evidence is sufficient to determine that he has no functional impairment from that condition.

Bennett's second argument is that the ALJ should have developed the record to determine "the extent to which psychological factors are affecting Bennett's physical condition." Plaintiff's Memorandum at 18. There is no indication that the record was not fully developed in this area.

The claimant has the burden of proof and must "bring to [the Commissioner's] attention everything that shows that you are blind or disabled [including] medical and other evidence that we can use to reach conclusions about your medical impairment(s)." 20 CFR § 404.1512(a). The ALJ considered all the medical evidence identified by Bennett and found that it does not show any severe mental impairment. The agency psychological expert reviewed the medical evidence and reached the same conclusion. Tr. 203, 215.

In 1991, Bennett received psychiatric testing to rule out malingering. This revealed no deficit and resulted in no recommendation for psychiatric treatment of any kind. Tr. 335. There is no record of any other psychological treatment or testing. In his disability claim, Bennett did not allege psychological impairments. The cases and regulations do not imply that the ALJ's duty to develop the record extends to undiagnosed conditions that were not asserted by the claimant and for which there is no medical evidence. The ALJ had no duty to develop the record in the absence of some basic evidence proffered by Bennett to support the existence of a psychological disorder.

In summary, the ALJ properly evaluated the medical evidence in the record and reasonably found that it did not support the existence of any condition that limits Bennett's ability to perform basic work activities, as required in most jobs. Accordingly, the Commissioner's final decision should not be disturbed.

## RECOMMENDATION

Based on the foregoing, the ALJ's determination was based on proper legal standards and supported by substantial evidence. The Commissioner's final decision should be affirmed and final judgment should be entered pursuant to sentence four of 42 USC § 405(g) dismissing this case with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ___12___ day of August, 2005.

_____/s/_____
John P. Cooney
United States Magistrate Judge